Thank you, sir. Thank you. Good morning, your honors. May it please the court. My name is Eric Welsh. I represent the petitioners Leonilo Sarmiento Lasam, Marie-Antoinette Bituan Lasam and their son Samuel Seth Bituan Lasam in this petition for review from the Board of Immigration Appeals. The Lasam family is seeking a petition for review in this court because the Board of Immigration Appeals and the Immigration Court erred in their case against torture. They did err in several respects, most fundamentally dealing with credibility. The central issue in this case is the Board and the judge's decision that the Lasams did not provide credible testimony in support of their applications for relief. And because of that erroneous finding on credibility, the Board and the judge wrongly decided that there was not changed circumstances that would warrant a late filing of asylum and also erred in their finding regarding a well-founded fear of future persecution. Okay, so let's, what is the standard of review as to those credibility determinations? The credibility determinations and with great deference that determinations must be reasonable and they must consider the totality of the circumstances. But it's substantial evidence, right? If substantial evidence supports the credibility determination, then we have no way to get involved, correct? Yes, Judge Smith, that's correct. And I appreciate your argument, at least as to the years in question, because we have Singh versus Gonzalez, which suggests that inability to recall precise dates of events may not be enough. But what about the different accounts of what happened to the brother? Those seem to be quite important because they are attacks, and they're attacks on a son, and they're attacks on a son, which is different from the parents, and this is another son. So it seems to me those are pretty important facts. They would go to the heart of the issue, would you agree? I do, Your Honor, I do. Okay, so if it goes to the heart of issue, and Tonette says, and I'm sorry if I say her name wrong, I'm just an Idaho Yehoo, says that the brother was hit in the chest and then changed to stabbed and then identified himself as the member of the NPA. But Neal says he was hit in the chest, it occurred in 2003, then said to attack. A sister said the attack was a hit on the chest. A brother said it's a hit with machete. How can I say there's not substantial evidence to sustain that? Well, Your Honor, I think the consistent through line of the testimony from everyone involved, and I should correct, not testimony, there were only two people who testified in this case, it was the respondents. The declarations, affidavits from family members are all consistent about the threats and harm. Are only consistent about an attack, but not consistent about what the attack was or when it was. Correct. I mean, one key fact is even if, I mean, the whole thing is very odd, because the husband and wife are testifying only about something they heard on their telephone anyway. Yes. They have this declaration from the brother. The brother explains what happened. The wife's story tracks the brother except the brother says he didn't know it was the NPA for two years and she says they said it was the NPA. So that clearly was made up because it appears because the brother says he didn't realize for two years that it was the NPA, which certainly seems to make a difference as to what the motivation was. So that's problem one. But the, I mean, then what you have really is sort of like an oral exam on whether they, you know, read the brother's declaration right. It's kind of silly. I absolutely agree that it is a little bit silly. And I think the reason it's silly is that you're making, or the judge and the board are making a credibility assessment whether or not there is an actual fear of return based on bad witnesses. But the question is what else can they do? Well, the judge could make the assessment based on the record. Well, I have a question. You have all these letters and declarations from siblings and from an uncle who's a lawyer and so on. Are they in the record or not? I couldn't figure out. There seemed to be some objection that some of them weren't signed or weren't notarized or weren't translated or something. What is actually in the record? Yes, they're all in the record, Your Honor. And this is a fundamental problem we have with the immigration courts because the rules of evidence are loose to non-applicable that virtually everything is in the record and given weight according to how the judge believes it should be given weight. And I think that this case is an example of the weight given the wrong place so that the judge is, according to the testimony of the two witnesses in court who had no direct experience of the harm that happened in the Philippines to their family members. And the judge has given very little weight to the statements from the family members who suffered that harm. So we have inconsistent statements from witnesses providing hearsay evidence who did not have firsthand experience. But the bottom line is they had the affidavit. They knew what was on it. And yet, in order to get what they wanted, they seemed to change it to suit themselves, which seems to be substantial evidence about their credibility. Well, respectfully, Judge Smith, I disagree that they did it with the motive to enhance their chances of winning. I think they did it because they're not good witnesses. I believe they didn't have a fault. Just a minute. If somebody has to determine one's credibility, and now we've got the IJ looking at it and thereafter the BIA, and we have an affidavit, and then we have these testimony about what happened and they change it to suit themselves in order to make their case look better, that might say there isn't substantial evidence. Only, Judge Smith, if there was a motive to make their cases look better, if it seemed as if there were inconsistent statements that were some attempt to bolster their claim. But just a minute. You know that was the case, but you've got Tonette saying one thing, and then you've got the husband saying he was hit in the ear, and then he takes it to another ear, and then he says there's two attacks. Right. And that underlies the fact that they didn't really have a full understanding of what was happening. They knew from their family that there was something very bad. Well, I mean, the real question is, what, I mean, let's assume, I mean, their basic story, that they were told that there was this problem with the siblings saying the same thing, and let's assume that was sufficiently established, whether the brother was attacked or wasn't attacked. And that the parents really did say, don't come back, you know, there's all kinds of problems here. But is that enough? I mean, they didn't have any past persecution. Right. And the future persecution, I mean, the parents are still there. They haven't been attacked. I mean, clearly the parents don't want them there. They think the place is dangerous. Whether they think it's dangerous because of their particular circumstances or just because of the whole situation in the Philippines is less clear. And there was, I mean, the credibility finding here was kind of an afterthought. Yes. I mean, in fact, the basic holding of the immigration judge was that there's just not enough here to show even a 10 percent ballot fear of harm. Right, Your Honor. And I think that the 10 percent is crucial here because that is a low threshold when it comes to the fear of harm. And I believe in my reading of this case that the judge made the credibility assessment because the judge didn't want to find the likelihood of harm. I agree with your assessment. I think, though, that the. Because the judge didn't want to do what? That the credibility was, I believe, an afterthought. It was an afterthought because he thought they didn't have a case anyway. Because they didn't think that there was a likelihood of harm. But you can't reach that decision unless you find the witnesses not credible. If they're credible and if you take the as true their testimony and take as true the statements from the family, there's a likelihood. Well, I mean, if you wash out. I mean, if I were doing this, I would say and I'm not doing it, but I would wash out the story about the brother. Because, I mean, even at his version of the story, the brother's version of the story, it doesn't appear. It looked like a brawl, a brawl fight. And he later found out these people were NPA. But that was sort of incidental. So even if you go into his story entirely. So what you have is a lot of fear. And which did seem to trigger all the other relatives leaving. But nothing actually happened. And even if that is the case, Your Honor, that doesn't mean that the fear has abated. It doesn't mean that there is no concern about going back. There is. I am giving you that there was a subjective fear. I want to know why it's a well-founded fear. Well, Your Honor, the NPA is not an organization that forgives debts or forgets wrongs. They will continue to persecute those that they believe are opponents of them. This family, the Lassonde family, is aligned with a presidential family. But in fact, they didn't. The parents stayed in the house and they stayed in the house. So far, and thank God. And so is the sister. And there's no evidence the government is unable or unwilling to help. Well, Your Honor. I mean, the country reports don't say the government is unwilling or unable to help. Well, Your Honor. And there isn't anything in the record that says the government is unwilling or unable to help. I believe that there is evidence in the country conditions of inability. I believe that there is a willpower on the part of the Philippines. And the current president, Rodrigo Duterte, has taken a rather militant approach to the problem. But that doesn't mean that the problem is abated. In fact, it's a very difficult problem. I mean, the problem is that their standards are tough. That's the problem. I mean, these people clearly had a fear. Their parents, I believe, it seems to me, did tell them not to come back because they were afraid. But we still have an objective standard. Anyway, your time is up. I'll give you a minute in rebuttal. Thank you, Your Honor. I appreciate it. Good morning, Your Honors. May it please the Court. Michael Heiss on behalf of the Respondent, the Attorney General of the United States. Substantial evidence indeed supports the agency's decisions here that the aliens involved here failed to credibly testify. And there are, indeed, numerous inconsistencies in the record. But wasn't the credibility determination, at least on the part of the IJ at AFRESOL? I didn't hear your question. It wasn't the credibility determination. I mean, it was a very – I've never seen an IJ opinion structured that way. He went through everything. And then at the end he says, oh, by the way, they weren't so credible. And it's probably because of this very dialogue we were having. There may not have been – I mean, there were secondhand witnesses anyway. They didn't see what happened to the brother. They had different recollections about what they heard on the telephone. Maybe the brother – and the brother thing, as the brother told him, wasn't so connected to the NPA anyway. So – but whether they, in fact, had a fear and the family was, in fact, concerned, it seems at bottom, was true. The question was, were they concerned enough? In other words, it's not a case in which it's helpful to start nitpicking the credibility finding, their credibility, because it seems to me they're at least credible to the degree that this family really wasn't fear. Well, that's a subjective fear, as Your Honor knows. And maybe even objective fear, but maybe only because the whole situation in the country was a mess. Well, the objective fear, as Your Honors were discussing towards the end of the argument with my opposing counsel here, was that the family has remained there for over 13 years. Well, the parents have. The parents have. Yes. That – this Court has consistently held undermines the reasonableness of the fear of returning. And, yes, this is a subjective and objective standard that, under the totality of circumstances that the agency has to consider, it's whether or not the alien satisfied their objective burden of proof that their fear is reasonable. And while they might subjectively fear it based on, yes, a secondhand conversation and letters and statements from relatives, they still bear the burden of providing a credible and persuasive set of testimony, set of evidence. And the record here, yes, the adverse credibility finding here informs all of that, and that undermines everything, as well as the fact that the family is – I really don't understand why we are worrying or anybody is worrying very much about whether their secondhand story about what happened to the brother was consistent or not. I mean, we have the brother's story. Why don't we just believe the brother's story and forget about whether their story was right or wrong? Again, it's their burden of proof to present their best case. And if they're going to present evidence that is inconsistent, that leaves the agency – How many years before was this conversation on the telephone? The conversation on the telephone occurred in 2005. And when was the hearing? I believe the hearing was in 2010. All right. So the problem was that they had different recollections of a telephone conversation five years before. Sure. So that could get into questions about the minor details, such as dates, as Judge Smith pointed out, you know, minor – Well, I mean, to be frank, I wrote the Singh opinion, and I don't think it applies here. Because it was secondhand. The whole point of the Singh is that when you see something, you remember it. Sure. But you don't remember the date. The date's a secondary – it's not a sense perception. Here, nothing was a sense perception. Of all of the inconsistencies, the most crucial one, as Judge Smith pointed out, is that the father testified to a whole second event that maybe occurred in 2001. Again, we're talking about dates. But he might have been hit with a bat on one occasion. He might have been stabbed on another. One might have happened before the other. There's no reason to add a second event. I mean, truthfully, since he had no reason to be making that up, and since he had the declaration from the brother in front of him, you know, it's pretty likely that actually there were two, that he did have something happen earlier that he was remembering when he was actually there. What he eventually said is, that happened when I was there. Again, the brother's statement doesn't confirm that. Why would the brother – No, it doesn't confirm it. You're right. It's up to these aliens to provide evidence that compels the agency. Telling his brother just got in a lot of trouble because he was getting in bar fights. Again, that goes into questions of the nexus to a protected ground. Why was the brother being attacked? He says at one point that two years after the knife attack that it was – he found out after a poker room brawl that NPA people were present. It doesn't necessarily – But he didn't say that they did it. He never said they did it because – Exactly. But then the mother testifies that he said that I – I believe the quote is, I was attacked, or the guy said he was from the NPA. That's, again, getting into questions of why are they trying to enhance their claim. Are they enhancing their claim? Why would they do that? All that ultimately doesn't matter because it's their burden. And the whole thing really reverts back, and the only reason I asked the questions I did about the credibility determination is because he suggested the credibility determination is the reason they couldn't find that there's a well-founded fear of persecution. But there's another reason the credibility determination might be important, and that's because they had a June 2005 hearing, and at that hearing both the mother and the father admitted all the allegations, conceded removability, requested voluntary departure, admitted they'd never been persecuted, they did not fear persecution, they didn't fear the new people's army, and then after that they came up with a new lawyer and now they got some affidavits and now they're being challenged about those affidavits. Isn't that the truth? No disagreement, Your Honor. This call happened apparently the day that they did all of those things. They conceded their removability and called home, both of them on the call, and learned about these things that apparently the family didn't want to allegedly trouble them with, but then you get into questions as to when the things happened that were discussed on that call, including whether or not the parents even had a phone to receive phone threats. I mean, there's just so many inconsistencies here that things don't match up with each other. A couple of points that were raised initially as well is whether or not these go to the heart of the issue. That's not the standard under the Real ID Act. Any inconsistency, and we have numerous here, but any inconsistency regardless of whether it goes to the heart of the matter. Well, our case law doesn't quite hold up to that. I mean, anything that matters. The statute, so. Well, the statute does. I mean, it can't mean, you know, anything. Whether something's red or blue, it has no relationship to anything. Certainly. It can't be completely irrelevant. Immaterial, I think, would be a good word. But these, even under that standard, do go to the heart of the claim. Actually, Petitioner's Counsel has conceded here that that would go to the heart of the claim, thus satisfying even the old standard. Again, the petitioners bear the burden of proof. And one other critical argument that was raised in the primary argument, my opponent, was that the agency improperly weighed evidence. And that's simply not something this court can do under the substantial evidence standard. This court can't re-weigh evidence. The record must compel a contrary conclusion, leaving no room for anything else. As well as getting to the ultimate question, you know, setting aside the credibility finding, is their fear reasonable, given that the family has remained in the Philippines unharmed for this amount of time? Well, the family has. Just the parents have. Everybody else left. Well, the sister's still there. Well, the sister's there, but she doesn't use the name and she lives somewhere else. And any family remaining in the home country, and they claim to fear the same people, them remaining there. Now, whether they left for this reason or for economic reasons or whatever, but a huge number, a large number of people left. The initial basis of the threat allegedly was that the father had served in, I believe, the personal security for one of the presidents, and something to do with a land deal. But ultimately, this court's decision in Estrada, and there's a whole line of cases behind that, to talk about the family remaining in the home country without issue, undermines the reasonableness of the aliens' fear. This court has no further questions. Thank you. Thank you, Your Honor. I'll waive rebuttal. Thank you. Thank you both. The case of Lassen v. Sessions is submitted.
judges: Berzon, N.R. Smith, Nye